| .WALTZER, Judge.
We grant the prosecution’s writ of cer-tiorari and reverse the trial court’s judgment for the reasons stated below.
STATEMENT OF THE CASE
On 25 December 1999, the defendants Damon Dawson and Raymond Veal, both juveniles, and Shawn Dawson were arrested for aggravated burglary. On 28 December, the juvenile court found probable cause to hold both juveniles. The State filed a bill of information in the instant case against both juveniles and Shawn Dawson on 19 January 2000, charging all three with one count each of aggravated burglary. They subsequently pled not guilty to these charges. On 15 March, Raymond moved to quash the bill, and Damon subsequently adopted Raymond’s pleading. On 3 May, the court granted the motion to quash and ordered the matter transferred to the juvenile court as to Damon and Raymond. The defendants have been released on bond. The State noted its intent and now comes before this court seeking relief from this ruling. In response to an order from this court, the State recently filed the transcripts and the defendants’ motion to quash.
| ^DISCUSSION
The State argues the trial court erred in quashing the bill of information in this case because the trial court could not divest itself of jurisdiction over the case and transfer the case back to the juvenile court once the State elected to try the case in the criminal court by filing the bill of information. The State argues at some length concerning its adherence to the rules for transfer. A reading of the pertinent statute, La. Ch.C. art. 305, shows the State complied with the provisions for transfer and that the case was properly before the criminal court. However, a reading of the two transcripts supplied by the State shows that the trial court did not quash the bill because it found it did not have jurisdiction over the case. Rather, it appears the trial court quashed the bill because it agreed with the defendants’ position that they had essentially been deprived of the probable cause hearing required prior to the transfer of the case.
The defendants argued that the bill of information filed against them in criminal court should be quashed on three grounds: (1) they in essence were not granted a probable cause hearing in juvenile court prior to the State’s transfer of the case to criminal court; (2) counsel in juvenile court was ineffective for stipulating to probable cause after reading the police report; and (3) the State improperly withheld Brady material which, if produced in juvenile court, would have caused the court to find no probable cause. Without a finding of probable cause, the defendants argued, the State could not have filed charges against them in criminal court. Because these issues are interwoven, they will be discussed together.
The defendants were fifteen at the time of the crimes. They were arrested for aggravated burglary, and the juvenile court had original jurisdiction in this See La. Ch.C. art. 305(B)(2)(e). However, as per La. Ch.C. art. 305(B)(1)(b) and art. 305(B)(3), the juvenile court loses jurisdiction in a case such as this if it holds a continued custody hearing and finds probable cause that the child has committed an offense, and the State files a bill of information in the criminal court. If the child is being held in continued custody, as apparently the defendants were in this case, the State has thirty days in which to file charges. The crimes in the instant case were committed on 25 December; the bill of information was filed on January 19th. Thus, the bill was filed timely.
The defendants argued that they were in essence denied a probable cause hearing because counsel stipulated to a *650 finding of probable cause. They based this claim on the 28 December juvenile court minute entry, which so states. They argued that because defense counsel stipulated, the State was relieved of its burden of showing probable cause for the hearing. This claim has no merit. Adopting this reasoning, a defendant could plead guilty or stipulate in a trial to an element of an offense, then argue insufficient evidence because the State did not prove the element or the crime. Counsel chose to stipulate to probable cause; the State did not have a further obligation to show it. This claim of no hearing has no merit.
The defendants then argued that even if they were afforded a hearing, counsel was ineffective for stipulating to probable cause because this stipulation exposed the defendants to being tried in criminal court. In State v. Mims, 97-1500 pp. 44-45 (La.App. 4 Cir. 6/21/00), 769 So.2d 44, 72, this court stated:
The defendant’s claim of ineffective assistance of counsel is to be assessed by the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that his counsel’s performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove counsel was |4so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992). Counsel’s performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the “counsel” guaranteed to the defendant by the 6th Amendment of the federal constitution. Strickland, supra, at 686, 104 S.Ct. at 2064. That is, counsel’s deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 693, 104 S.Ct. at 2068.
Here, at neither hearing did the defendants call counsel who stipulated at the probable cause hearing. Instead, they called Ralph Brandt, the supervising assistant district attorney in juvenile court, and Victor Papae, the supervising attorney with O.I.D.P. in juvenile court. Neither of these men, however, was present at the December hearing; they merely testified as to standard procedure in juvenile court. Mr. Brandt testified that just prior to the probable cause hearing, the State gives the attorney a copy of the police report and has the pertinent officers available for questioning. Generally, after speaking with the officers and reviewing the police report, the defense attorney either stipulates to probable cause, or a probable cause hearing is held. He stated that generally, only the initial report is available because the hearing must be held within seventy-two hours of arrest.
Mr. Papae testified to basically the same procedure, noting that if the defense attorney is satisfied after speaking to the officers and reviewing the report that there was probable cause, the defense attorney may stipulate to probable cause. He stated that in most cases where the crime is relatively minor and the child will be released to its parent, counsel would normally stipulate. Mr. Papae ^testified that generally, counsel does not stipulate if the case could be transferred to the criminal court. He stated, however, that he had not spoken to the attorney involved in this case and he had no idea why she stipulated. He testified this attorney had worked in that capacity for over five years, and that “she was an experienced attorney and generally knew what she was doing.” He acknowledged that the decision of whether to stipulate was at the discretion of the attorney handling the case. He also *651 testified that it would be a rarity if the attorney consulted with his client or his client’s parent prior to determining whether to stipulate.
It was supposed that the attorney who stipulated viewed only the gist, which was included in the defendants’ memorandum in support of their motion to quash. This summary notes that shortly after the burglary, the defendants were viewed by one of the victims and positively identified as the perpetrators. If, indeed, this was the information viewed by defense counsel, it cannot be said that she was ineffective for stipulating to probable cause because this information would support such a finding. However, the defendants failed to show exactly what defense counsel viewed. For whatever reason, they failed to call the defense attorney who stipulated, or in fact any person who may have been present for the hearing. The defendants had the burden of showing both that counsel was ineffective and that this ineffectiveness prejudiced them. They failed to prove ineffective assistance of counsel, especially if, as they claimed, defense counsel viewed the gist, which showed probable cause to believe they committed the burglary. This claim also has no merit.
As to their final claim, the defendants contended the State withheld information, the supplemental report, which if produced would have caused the | ¿juvenile judge to find no probable cause to hold them. Without this probable cause showing, the State could not transfer the case to criminal court.
To comport with the dictates of the due process clause of the Fourteenth Amendment, the State must disclose to the defense evidence which is favorable to the defense and is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Porter, 98-0279 (La.App. 4 Cir. 3/15/00), 756 So.2d 1156; State v. Phillips, 92-1063 (La.App. 4 Cir. 2/29/96), 670 So.2d 588, Writ den. 96-2131 (La.9/5/97), 699 So.2d 85. Included in this rule is evidence which impeaches the testimony of a witness whose credibility or reliability may determine guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). “[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment.” State v. Rosiere, 488 So.2d 965, 970 (La.1986). See also Porter; Phillips.
Materiality was defined in U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985): “The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” The same test is to be employed whether or not the defense makes a pretrial request for exculpatory evidence. Bagley; Phillips.
In Kyles v. Whitley, 514 U.S. 419, 434-435, 115 S.Ct. 1555, 1565-1566, 131 L.Ed.2d 490 (1995), the Court discussed “materiality”:
Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a ^preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant’s acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant) .... Bagley’s touchstone of materiality is a “reasonable probability” of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, under *652 stood as a trial resulting in a verdict worthy of confidence. A “reasonable probability” of a different result is accordingly shown when the Government’s evidentiary suppression “undermines confidence in the outcome of the trial.” Bagley, 478 U.S., at 678, 106 S.Ct., at 3381.
The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpa-tory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
Here, the exculpatory evidence to which the defendants alluded was the supplemental report, a copy of which was attached to their motion to quash, which indicates the other victim did not identify them as the perpetrators. On page five of the supplemental report, the narrative states: “At 11:06 p.m., Mr. Williams [the other victim] viewed the suspects but made no identifications. He said that the perpetrators of the crime had been better dressed than the subjects he was viewing.” The defendants argued that this lack of identification, if known by the juvenile court, would have led the court to conclude there was no probable cause for the charge against them. Without a finding of probable cause, the State could not have filed the ¡«bill in criminal court. The defendants pointed out that the date of the report, 25 December, was prior to the date of the hearing, 28 December, and that even if the State did not have a copy of the report in its possession at the time of the hearing, the State is still charged with having had it because it was in existence at the time of the hearing.
These claims also have no merit. First, it is unclear if the date of the supplemental report is correct in that it is dated and timed at 25 December 1999 at 10:00 p.m., the actual time of the arrests. It is highly unlikely that the officers were typing up the report at the time they were arresting the defendants. It is much more likely that the supplemental report was prepared at some later date, and the date and time of the arrest, which appears just above the date and time of the report on page two, were also put in the box noting the date and time of the report.
Even if the report was completed on 25 December, it appeal’s the single line quoted above would not have defeated a finding of probable cause to believe the defendants committed the crimes. The report states that the second victim did not make any identifications, noting that the defendants’ clothing was nicer than that worn by the perpetrators. More importantly, however, the supplemental report also notes that Damon and his brother were seen soon after the burglary, and they fit the descriptions given by the victims. In addition, both the gist and the supplemental report indicates that the other victim positively identified both juvenile defendants as the perpetrators. Thus, even if the supplemental police report had been available and if counsel had not stipulated to probable cause, the juvenile court would have been faced with a situation where one of the victims positively identified both defendants, while the other victim made no identifications because the defendants were more nicely dressed than the perpetrators. Given these circumstances, even if the | ^supplemental report had been produced, there is no reasonable probability that the juvenile court would have found no probable cause to hold the defendants, especially given the positive identification by one of the victims. With the finding of probable cause, the State would still have *653 been authorized by Ch.C. art. 305 to file the bill in criminal court. As such, this claim also has no merit.
The defendants’ right to a continued custody/probable cause hearing was not violated by their counsel’s decision to stipulate. The defendants did not show that counsel was ineffective for so stipulating. In addition, the defendants failed to show a reasonable probability that if the supplemental report had been produced for the hearing and had counsel not stipulated to probable cause, the juvenile court would have found no probable cause- to hold them. In the absence of these showings, the State properly filed the bill of information in criminal court. Thus, there was no basis for the trial court to quash the bill, and the trial court erred by so doing.
APPLICATION FOR WRIT OF CER-TIORARI GRANTED. RULING ON THE MOTION TO QUASH REVERSED.